| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------X<br>ANNEMARIE CANTAVE AND SHIYAH<br>TEITELBAUM, INDIVIDUALLY AND ON<br>BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                              Plaintiffs,<br><br>        -against-<br><br>THE CBE GROUP, INC.,<br><br>                              Defendant.<br>------------------------------------------------------------------X | For Online Publication Only<br><br>**FILED**<br>**CLERK**<br>3/12/2021 3:32 pm<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br>**ORDER**<br>19-CV-5796 (JMA) (AYS) |

**APPEARANCES**

Jonathan M. Cader
David M. Barshay
100 Garden City Plaza, Suite 500
Garden City, NY 11530
    *Attorneys for Plaintiffs*

Brendan H. Little
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

### I.    BACKGROUND

Plaintiffs Annemarie Cantave and Shiyah Teitelbaum ("Plaintiffs") bring this action against The CBE Group, Inc. ("Defendant"), a debt collector, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). (ECF No. 1 at 1.) The claims arise from two debt collection letters Defendant sent to Plaintiffs. Defendant sent the first letter, dated October 20, 2018 (the "Cantave Letter"), to Plaintiff Cantave to collect an outstanding debt of $579.53 owed to Verizon Wireless. (ECF No. 1-1 at 1.) Defendant sent the second letter, dated

November 10, 2018 (the "Teitelbaum Letter"), to Plaintiff Teitelbaum to collect an outstanding debt of $55.81 owed to Charter Communications. (ECF No. 1-2 at 1.)

Both the Cantave and Teitelbaum Letters are the initial communications Defendant sent to Plaintiffs. (ECF No. 1 at 4.) In both Letters, Defendant informed Plaintiffs that their debts had been referred to Defendant for collection and offered to discuss payment options if Plaintiffs were unable to immediately pay their debts in full. (ECF No. 1-1 at 1; ECF No. 1-2 at 1.) Both Letters contained the following features that are relevant to this litigation:

- The front of each Letter included the same validation language, (ECF No. 1-1 at 1; ECF No. 1-2 at 1):

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

- Under the validation language, the Letters listed Defendant's "mailing address," (ECF No. 1-1 at 1; ECF No. 1-2 at 1):

> The CBE Group, Inc. mailing address Po Box 2635, Waterloo, IA 50704-2635

- The top left corner of the Letters contained Defendant's name and logo, an address without any description, and what appear to be hours of operation, (ECF No. 1-1 at 1; ECF No. 1-2 at 1):

 

2

The Letters differed, however, in that they offered the recipients different options for making payments:

- The Cantave Letter contained three payment options, including: online, by mail, or over the phone. An address was listed in the box describing payment by mail, (ECF No. 1-1 at 1):



- The Teitelbaum letter only contained an option to pay online. No address was listed in this part of the Teitelbaum letter, (ECF No. 1-2 at 1):



- The Teitelbaum Letter did, however, contain a detachable payment slip with two addresses. One address, which appears to have been positioned in the lower right corner to be visible through a window on the return envelope, contained the same address as the address labeled "mailing address" earlier in the letter. A second address in the upper left corner of the slip contains no description other than "change service requested," (ECF No. 1-2 at 1):



- The Cantave Letter did not contain a detachable payment slip. However, like the Teitelbaum Letter, it contained an address without any label or description other than "change service requested," (ECF No. 1-1 at 1):



4

Plaintiffs initiated the instant litigation on October 14, 2019, alleging that the Letters violate the FDCPA because they contain multiple addresses. In particular, they argue that the multiple addresses would confuse the least sophisticated consumer as to which address to use to send written disputes or to inquire as to the name and address of the original creditor. (ECF No. 1 at 5-16.) Additionally, they claim that the multiple addresses "overshadow" Plaintiffs' rights to dispute the debt, receive verification of it, or request the name of the original creditor. (Id.)

After appearing for a pre-motion conference before the undersigned, Defendant now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 13-1), which Plaintiffs oppose, (ECF No. 14). For the reasons set forth below, Defendant's motion is **GRANTED** in its entirety.

## II. DISCUSSION

The Court dismisses the complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to allege plausible claims to relief under the FDCPA.

### A. Standard

#### 1. Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice, nor will "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all

reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Ordinarily, on a motion to dismiss, a court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  However, this standard "has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken." Young AE Kim v. Advanced Call Center Technologies, LLC, No. 19-CV-4672, 2020 WL 5893964, at *1 (E.D.N.Y. Oct. 5, 2020) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)).  In cases brought pursuant to the FDCPA, courts that have broadly interpreted this standard have also included debt collection letters that complaints allege violate the FDCPA.  Id.

2. **Section 1692e**

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  There are sixteen subsections that outline a non-exhaustive list of practices that fall within the prohibited conduct under § 1692e. A catch-all subsection, § 1692e(10), bans "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  Since the list in the subsections is non-exhaustive, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  A debt collection letter is deceptive if it is susceptible to more than one reasonable interpretation, at least one of which is inaccurate.  See id. at 1319; see also Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

6

### 3. Section 1692g

Section 1692g requires debt collectors to provide consumers with specific information within five days of initiating contact.[1] The required information under the statute includes providing a consumer with a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). The validation notice is intended "to protect consumers from 'debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid' by 'inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of the debt.'" Hochhauser v. Grossman & Karaszewski, PLLC, No. 19-CV-2468, 2020 WL 2042390, at *4-5 (E.D.N.Y. Apr. 28, 2020) (quoting Lotito v. Recovery Assocs. Inc., No. 13-CV-5833, 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014)) (alterations in original).

A validation notice is not legally sufficient "if that notice is overshadowed or contradicted by other language in communications to the debtor." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) (citing Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998)). "A notice overshadows or contradicts the validation notice 'if it would make the least sophisticated

---

[1] In particular, the required information is:

    (1) the amount of the debt;
    (2) the name of the creditor to whom it is owed;
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the debt's validity, or any portion of it, the debt will be assumed to be valid by the debt collector;
    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion of it, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

See 15 U.S.C. § 1692g.

consumer uncertain as to her rights.'" Jacobson, 516 F.3d at 90 (quoting Russell v. Equifax A.R.S, 74 F.3d 30, 35 (2d Cir. 1996)). "Since 2006, this prohibition against 'overshadowing' has also been enshrined in the text of the FDCPA itself: '[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.'" Belichenko v. Gem Recovery Systems, 17-CV-01731, 2017 WL 6558499, at *6 (E.D.N.Y. Dec. 22, 2017) (quoting § 1692g(b)).

### 4. Least Sophisticated Consumer

In evaluating whether a communication violates § 1692e, the Court applies an objective standard by considering how the "least sophisticated consumer" would understand the debt collection letter. Carlin v. Davidson Fink, LLP, 852 F.3d 207, 216 (2d Cir. 2017); Clomon, 988 F.2d at 1318. Though the "least sophisticated consumer" does not have the astuteness of a "Philadelphia lawyer," they are neither "irrational nor a dolt." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 1996). Additionally, the "least sophisticated consumer" can be expected to possess a "willingness to read a collection notice with some care." Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005). The purpose of the "least sophisticated consumer" standard is to protect "the gullible as well as the shrewd." Jacobson, 516 F.3d 85 at 90. This objective test protects consumers against deceptive debt collection practices while also protecting debt collectors from liability for "bizarre or idiosyncratic" interpretations of debt collection letters. Clomon, 988 F.2d at 1320. While "courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." Diaz v.

Residential Credit Sols., Inc., 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (quoting Rozier v. Fin. Recovery Sys., No. 10-CV-3273, 2011 WL 2295116, at *2 (E.D.N.Y. June 7, 2011)).

**B. Application**

Plaintiffs contend that Defendant's letters violate sections 1692g(b), 1692e, and 1692e(10) of the FDCPA because they contain multiple addresses. (ECF No. 1 at 5-16.) They first allege that the least sophisticated consumer would be confused as to which of these addresses to use to send a written dispute or to request the name and address of the original creditor. Because the least sophisticated consumer would understand that disputes or requests for information should be mailed to the address explicitly labeled "mailing address," the Court finds that the Letters do not violate the FDCPA as a matter of law.

Recently, two cases were brought in this district to challenge letters Defendant sent to consumers that were nearly identical to the Teitelbaum Letter at issue here. See Truckenbrodt v. CBE Grp., Inc., No. 19-CV-2870, 2020 WL 6161254 (E.D.N.Y. Oct. 21, 2020); Pinyuk v. CBE Group, Inc., No. 17-CV-5753, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019). Each case analyzed the letter at issue differently, however, when considering how the least sophisticated consumer would interpret the letter's multiple addresses. In Pinyuk, the court granted the plaintiff leave to amend, crediting the argument "that when a least sophisticated consumer receives a collection letter which she does not understand and the letter contains multiple addresses without clear direction as to where to mail a written request, the consumer would end up, as here, not disputing the letter at all because she 'is frightened of calling a collection agency where highly trained aggressive debt collectors answer calls' was plausible." 2019 WL 1900985, at *7 (citation omitted). In contrast, in considering the plaintiff's similar argument regarding confusion caused by the multiple addresses on the letter at issue, the court in Truckenbrodt observed that "[a]ny

9

reasonable consumer—even an unsophisticated one—would understand that a dispute about the debt's validity should go to the mailing address immediately following the instruction for how to dispute the debt, while any payment should be sent to the 'Payment Processing Center.'" 2020 WL 6161254, at *3.

Ultimately, the Court finds the analysis in Truckenbrodt more persuasive. Simply because a debt collection letter includes multiple addresses "does not render it misleading . . . unless it is unclear which address a consumer should contact." Kucur v. Fin. Recovery Servs., Inc., No. 19-CV-5453, 2020 WL 1821334, at *4 (E.D.N.Y. Apr. 9, 2020) (citing Park v. Forster & Garbus, LLP, No. 19-CV-3621, 2019 WL 5895703, at *6 (E.D.N.Y. Nov. 12, 2019)). A letter is materially misleading if it "explicitly misdirects consumers . . . to the wrong address." Id. (citing Carbone v. Caliber Home Loans, Inc., No. 15-CV-4919, 2016 WL 8711197, at *4 (E.D.N.Y. Sept. 30, 2016)).

Here, the Letters are not misleading, even though they contain multiple addresses. On both Letters, the mailing address is listed immediately below the validation notice and clearly labeled using the language: "The CBE Group, Inc. mailing address Po Box 2635, Waterloo, IA 50704-2635." (ECF No. 1-1 at 1 (emphasis added); ECF No. 1-2 at 1 (emphasis added).) The least sophisticated consumer, who is "capable of 'making basic, reasonable and logical deductions and inferences,'" would do so here and therefore know to send mail to the mailing address if they were to read the Letters in their entirety. Kucur, 2020 WL 1821334, at *4 (quoting Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007)). In addition, the location of the mailing address, printed directly below the validation notice, provides important context that would further lead the least sophisticated consumer to understand that this address is to be used for disputing the debt or requesting more information. See Truckenbrodt, 2020 WL 6161254, at

10

\*3 ("The proximity of this (ungrammatical) mailing address to the explanation of how to dispute the debt makes clear that this address is where disputes should be sent.") Consequently, the least sophisticated consumer would send a dispute or inquiry to the only address explicitly labeled "mailing address" and printed in closest proximity to the validation language.

Relatedly, Plaintiffs also allege that the presence of the multiple addresses "overshadows" Plaintiffs' rights to dispute the debt, receive verification of the debt, and request the name of the original creditor. (ECF No. 1 at 5-16.) The Court finds this argument meritless because "[t]he collection letter plainly states that the recipient has a right to dispute the debt, and to request information about the original creditor." Dillard v. FBCS, Inc., No. 19-CV-968, 2020 WL 4937808, at \*5 (E.D.N.Y. Aug. 24, 2020). The presence of multiple addresses on the same letter in no way contradicts the articulation of Plaintiffs' rights. Plaintiffs' "nitpicks fail to undermine Defendant's letter, which provides effective notice regarding the debt and how to dispute it, inquire about it, or pay it." Id. Accordingly, Plaintiffs' claims fail because the presence of multiple addresses does not render the letter deceptive or misleading, nor does it overshadow the clear validation notice.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is hereby **GRANTED**, and Plaintiffs' complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: March 12, 2021
     Central Islip, New York

                                                    /s/ (JMA)
                                                   JOAN M. AZRACK
                                                   UNITED STATES DISTRICT JUDGE